No. 20-8032

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

MELISSA THORNLEY, ET AL.,

*Plaintiffs-Respondents*,

v.

CLEARVIEW AI, INC.,

*Defendant-Petitioner*.

On Petition for Permission to Appeal
from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 20-cv-3843 – Hon. Sharon Johnson Coleman

**ANSWER IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL**

Daniel M. Feeney
Miller Shakman Levine & Feldman LLP
180 North LaSalle Street, Suite 3600
Chicago, IL 60601
Tel.  (312) 263-3700
Fac. (312) 263-3270
Email: dfeeney@millershkman.com

David S. Golub
*Counsel of Record*
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06901
Tel. (203) 325-4491
Fac. (203) 325-3769
Email: dgolub@sgtlaw.com

Brian P. O'Meara
Kevin M. Forde
Kevin R. Malloy
Forde & O'Meara LLP
111 West Washington Street, Suite 1100
Chicago, IL 60602
Tel.  (312) 641-1441
Fac.  (312) 641-1288
Email:  bomeara@fordellp.com
        kforde@fordellp.com
        kmalloy@fordellp.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-8032

Short Caption: Melissa Thornley, et al. v. Clearview AI, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Miller Shakman Levine & Feldman LLP; Forde & O'Meara LLP; and Silver Golub & Teitell LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ David S. Golub    Date: November 12, 2020

Attorney's Printed Name: David S. Golub

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☑  No ☐

Address: 184 Atlantic Street

    Stamford, CT 06901

Phone Number: (203) 325-4491    Fax Number: (203) 325-3769

E-Mail Address: dgolub@sgtlaw.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-8032

Short Caption: Melissa Thornley, et al. v. Clearview AI, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Miller Shakman Levine & Feldman LLP; Forde & O'Meara LLP; and Silver Golub & Teitell LLP

(3)    If the party, amicus or intervenor is a corporation:

      i)    Identify all its parent corporations, if any; and

          N/A

      ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Daniel M. Feeney    Date: November 12, 2020

Attorney's Printed Name: Daniel M. Feeney

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: 180 North LaSalle Street, Suite 3600

    Chicago, IL 60601

Phone Number: (312) 263-3700    Fax Number: (312) 263-3270

E-Mail Address: dfeeney@millershakman.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-8032

Short Caption: Melissa Thornley, et al. v. Clearview AI, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Miller Shakman Levine & Feldman LLP; Forde & O'Meara LLP; and Silver Golub & Teitell LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Brian P. O'Meara    Date: November 12, 2020

Attorney's Printed Name: Brian P. O'Meara

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 111 West Washington Street, Suite 1100

    Chicago, IL 60602

Phone Number: (312) 641-1441    Fax Number: (312) 641-1288

E-Mail Address: bomeara@fordellp.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-8032

Short Caption: Melissa Thornley, et al. v. Clearview AI, Inc.

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

 ☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Miller Shakman Levine & Feldman LLP; Forde & O'Meara LLP; and Silver Golub & Teitell LLP

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

  N/A

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Kevin M. Forde Date: November 12, 2020

Attorney's Printed Name: Kevin M. Forde

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: 111 West Washington Street, Suite 1100

Chicago, IL 60602

Phone Number: (312) 641-1441 Fax Number: (312) 641-1288

E-Mail Address: kforde@fordellp.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>20-8032</u>

Short Caption: <u>Melissa Thornley, et al. v. Clearview AI, Inc.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera</u>

    _____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Miller Shakman Levine & Feldman LLP; Forde & O'Meara LLP; and Silver Golub & Teitell LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

           <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

           <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

---

Attorney's Signature: <u>/s/ Kevin R. Malloy</u>    Date: <u>November 12, 2020</u>

Attorney's Printed Name: <u>Kevin R. Malloy</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: <u>111 West Washington Street, Suite 1100</u>

    <u>Chicago, IL 60602</u>

Phone Number: <u>(312) 641-1441</u>    Fax Number:  <u>(312) 641-1288</u>

E-Mail Address: <u>kmalloy@fordellp.com</u>

rev. 12/19 AK

# TABLE OF CONTENTS

Appearance and Circuit Rule 26.1 Disclosure Statements ........................... i

Table of Contents ................................................................................ vi

Table of Authorities ............................................................................ vii

Introduction ........................................................................................ 1

Statement of Case ............................................................................... 4

Question Presented .............................................................................. 9

Argument ........................................................................................... 10

    I.   The Court Should Deny Discretionary Review Under §1453(c)(1) ............... 10

        A.  The District Court's Remand Decision Presents No CAFA-Related Issue ............... 10

        B.  The District Court's Remand Decision Correctly Applied
           Settled Article III Standing Principles ........................ 12

           1.  The District Court Correctly Applied Established Article III
               Case Law, Including *Bryant* ........................ 12

           2.  Plaintiffs Have Not Alleged Any Particularized Harm Resulting
               from Clearview's Violation of Section 15(c) of BIPA ........................ 15

Conclusion ........................................................................................ 18

# SHORT APPENDIX

Plaintiffs' Complaint ....................................................... A-5 – A-17

Declaration of Richard Schwartz ....................................... A-18 – A-20

Declaration of Thomas Mulcaire ....................................... A-21 – A-25

*Hazlitt v. Apple Inc.* ...................................................... A-26 – A-35

# TABLE OF AUTHORITIES

*Anderson v. Bayer Corp.,* 610 F.3d 390 (7th Cir. 2010)....................................................5

*Bryant v. Compass Group USA, Inc.,* 958 F.3d 617 (7th Cir. 2020) .................................... *passim*

*Bullard v. Burlington Northern Santa Fe Ry. Co.,* 535 F.3d 759 (7th Cir. 2008) .........................1

*Casillas v. Madison Ave. Assocs., Inc.,* 926 F.3d 329 (7th Cir. 2019)...................................11, 16

*Caterpillar Inc. v. Williams,* 482 U.S. 386 (1987)...........................................................5

*Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240 (10th Cir. 2009)......................1, 10

*Coleman v. Estes Express Lines, Inc.,* 627 F.3d 1096 (9th Cir. 2010) ...................................1, 10

*College of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.,*
585 F.3d 33 (1st Cir. 2009).................................................................................1, 10

*Collier v. SP Plus Corp.,* 889 F.3d 894 (7th Cir. 2018)...................................................11, 16

*Cothron v. White Castle Sys., Inc.,* No. 19 CV 00382, 2020 WL 3250706
(N.D. Ill. June 16, 2020) ..........................................................................................14

*Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81 (2014)..................................11

*Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016).....................................17

*Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.,* 928 F.3d 325
(4th Cir. 2019)......................................................................................................10

*Garbie v. DaimlerChrysler Corp.,* 211 F.3d 407 (7th Cir. 2000)..............................................5

*Groshek v. Time Warner Cable, Inc.,* 865 F.3d 884 (7th Cir. 2017) ........................................13

*Hazlitt v. Apple Inc.,* No. 3:20-CV-421-NJR, 2020 U.S. Dist. LEXIS 210963,
(S.D. Ill. Nov. 12, 2020) ......................................................................................2, 12

*Louisiana v. American Nat. Prop. Cas. Co.,* 746 F.3d 633 (5th Cir. 2014) ...............................11

*Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197 (Ill. 2019)........................................2, 4

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1549 (2016) ..............................................................2

**Statutes and Rules**

28 U.S.C. § 1453(c)(1)................................................................ *passim*

28 U.S.C. § 1447(d) ...........................................................................1

15 U.S.C. § 1681c(g)(1)....................................................................16

740 ILCS 14/1 ....................................................................................2

740 ILCS 14/15 .........................................................................4, 6, 7, 8

740 ILCS 14/20...................................................................................4

Plaintiffs Melissa Thornley, Deborah Benjamin-Koller and Josue Herrera submit this Answer in Opposition to the Petition for Permission to Appeal filed by Defendant-Petitioner Clearview AI, Inc. ("Clearview") pursuant to 28 U.S.C. § 1453(c)(1).

## Introduction

Plaintiffs respectfully submit that this case does not satisfy the criteria for discretionary review of a remand order under § 1453(c)(1) of the Class Action Fairness Act ("CAFA").

Section 1453(c)(1) is an exception to the general rule that remand orders are not reviewable on appeal. It is not intended to open the door to appellate review of <u>any</u> removal issue, but rather to allow for appellate consideration of important <u>CAFA-related</u> issues that are novel or unsettled. As the legislative history explains, the discretion granted under § 1453(c)(1) is designed "to develop a body of appellate law interpreting [CAFA] without unduly delaying the litigation of class actions. As a general matter, appellate review of orders remanding cases to state court is not permitted, as specified by 28 U.S.C. [§] 1447(d)." S. Rep. No. 109–14, at 49.

Consistent with this legislative history, appellate courts have recognized that "the purpose of § 1453(c)(1) is to develop a body of appellate law <u>interpreting CAFA</u>," *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1247 (10th Cir. 2009) (emphasis added; brackets and internal quotation marks omitted), and that "a key factor in determining whether to accept an appeal is 'the presence of an important CAFA-related question' in the case,'" *Coleman v. Estes Express Lines, Inc.*, 627 F.3d 1096, 1100 (9th Cir. 2010), quoting *College of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.,* 585 F.3d 33, 38 (1st Cir. 2009). This Court's decision in *Bullard v. Burlington Northern Santa Fe Ry. Co.*, 535 F.3d 759, 761 (7th Cir. 2008), granting discretionary review to interpret the meaning of the term "mass action," as used in CAFA,

has been cited as an example of application of this standard. *See College of Dental Surgeons*, 585 F.3d at 38.

Discretionary appellate review is, thus, warranted under § 1453(c)(1) only where a remand order (i) presents an important CAFA-related issue that is (ii) either unsettled or appears to have been decided incorrectly. *Id.* Here, the decision below involved <u>no</u> CAFA-related issue, but rather turned on established principles of Article III standing applicable to *any* federal action – *i.e.*, that a claim of "'a bare procedural violation of a statute, divorced from any concrete harm,' does not 'satisfy the injury-in-fact requirement of Article III.'" Memorandum Opinion and Order ("Remand Order") at 2, quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

Equally important, the ruling below involved no novel or unsettled legal questions. The *Spokeo* rule of Article III standing addressed by the district court is the subject of well-established Seventh Circuit case law, including, most recently, *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020), applying the *Spokeo* rule in the context of the specific state statute – the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 ("BIPA") – involved in this case.

Finally, the district court correctly applied these settled principles of law further obviating any need for appellate review. In their Complaint, Plaintiffs contend that Clearview improperly sold access in Illinois to a database containing Plaintiffs' and the proposed Class's biometric facial scans, in violation of § 15(c) of BIPA, which prohibits – without exception – the sale of biometric data in Illinois. Section 15(c) is violated even without proof that an individual's biometric data was disseminated, and the Illinois Supreme Court has held that, in order to further BIPA's public policy purpose, statutory aggrievement resulting from a violation of § 15(c), without proof of

actual injury, is sufficient to confer BIPA standing (and the right to recover BIPA statutory damages) in <u>Illinois state courts</u>. *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1207 (Ill. 2019).

Plaintiffs' Complaint is based solely on Clearview's statutory violation of § 15(c).  The Complaint expressly alleges that neither Plaintiffs, nor the proposed Class, sustained any actual injury from Clearview's violation other than statutory aggrievement.  The issue before the district court was, thus, whether Plaintiffs' allegations – undeniably sufficient to establish a cause of action under state law – were sufficient to establish Article III standing in federal court.

In *Bryant*, this Court addressed this precise issue: the interplay between Illinois state law, which allows a plaintiff to sue <u>in state court</u> for a procedural violation of BIPA unaccompanied by any allegation of actual harm, and the requirements for Article III standing <u>in federal court</u>, which bar an action based on a bare procedural violation absent allegations of a concrete and particularized injury-in-fact.  The *Bryant* Court held, *inter alia*, that Article III standing does not exist absent allegations that a procedural violation of the Act caused the plaintiff actual injury. 958 F.3d at 626.

The district court expressly analyzed Plaintiffs' claims under the framework provided by *Bryant* and correctly held that, as in *Bryant*, because Plaintiffs here do "not allege an injury-in-fact ... Clearview has failed to establish Article III standing."  Remand Order at 4.  The district court's straightforward and unremarkable (four page) decision is fully consistent with *Spokeo* and *Bryant*. Indeed, on the very day this Answer is being filed, the District Court for the Southern District of Illinois addressed this precise issue and independently reached the exact same conclusion as the

3

district court did below. *See Hazlitt v. Apple Inc.*, No. 3:20-CV-421-NJR, 2020 U.S. Dist. LEXIS 210963, at \*18-19 (S.D. Ill. Nov. 12, 2020), included in Short Appendix at A-26–A-35.

In light of the absence of an important (and unsettled) CAFA-related issue and the district court's correct application of established law, the Court should decline to exercise its discretion and deny Clearview's request for permission to seek appellate review of the district court's remand order pursuant to § 1453(c)(1).

## Statement of the Case

Section 20 of BIPA provides a statutory cause of action for violations of any provision of BIPA § 15. 740 ILCS 14/20. The Illinois Supreme Court has expressly held that "an individual need not allege some actual injury or adverse effect, beyond [a] violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person." *Rosenbach*, 129 N.E.3d at 1207.

Section 15(c) of BIPA prohibits a private entity from selling, leasing, or otherwise profiting from a person's biometric identifier or biometric information:

> No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information. [740 ILCS 14/15(c).]

The prohibition in § 15(c) is absolute: unlike other sections of BIPA, § 15(c) contains no exceptions based on an individual's consent. The section, thus, does not require notice to Illinois citizens of the commercial exploitation of their biometric data or grant them a right to approve the sale of their biometric data. Moreover, § 15(c) prohibits commercial trafficking in biometric data in Illinois even in the absence of any actual dissemination or disclosure of such data. Section 15(c) may fairly be understood as reflecting the General Assembly's determination that biometric data is not to be the subject of any commercial enterprise in Illinois.

Plaintiffs, citizens of Illinois, allege that Clearview violated § 15(c) by selling access to a database containing their (and the Class of other Illinois citizens') biometric identifiers and information to businesses in Illinois.  (Complaint, ¶34.)[1]  Unlike other cases against Clearview, Plaintiffs here make no claim of any other violation of BIPA.  Clearview accuses Plaintiffs of improperly crafting their Complaint to avoid federal jurisdiction, but Plaintiffs are the "master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 & n.7 (1987) (citing cases); *see also Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010) ("[T]he general rule in a diversity case is that 'plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum.'"); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (same).  Here, Plaintiffs intentionally limited their complaint to Section 15(c) because, while they believe that Clearview's conduct in secretly amassing a nationwide database of over three billion photographs and facial scans is repugnant, Clearview has submitted declarations in other actions asserting that it engaged in such conduct solely outside the State of Illinois (in New York and New Jersey) raising issues as to BIPA's application.[2]  Plaintiffs have framed their Complaint to avoid this issue by limiting their claim to Clearview's conduct in selling access to the biometric data in its database to customers in Illinois in violation of § 15(c) of BIPA.  Complaint, ¶34.

In particular, Plaintiffs do not assert that Clearview ever actually disclosed or otherwise disseminated their biometric data in the State of Illinois – conduct that, pursuant to § 15(d) of

---

[1]     A copy of Plaintiffs' Complaint is included in Short Appendix at A-05–A-17.

[2]     *See, e.g.*, Declaration of Richard Schwartz at ¶¶7, 9, at A-18–A-20; Declaration of Thomas Mulcaire at ¶4, at A-21–A-25, filed in *Mutnick v. Clearview AI, Inc.*, No. 1:20-cv-512 (N.D. Ill.).

BIPA, would have required Clearview to have obtained Plaintiffs' consent.[3]  To the contrary, Plaintiffs affirmatively allege that no disclosure of their biometric data has occurred.  (*Id.* ¶20.) Likewise, Plaintiffs have expressly limited the putative class they seek to represent in this action to individuals whose photographs and scans, although included in Clearview's database, have never been disseminated and "who suffered no injury from Defendant's violation of § 15(c) of BIPA other than statutory aggrievement," defining the proposed Class as follows:

> All current Illinois citizens whose biometric identifiers or biometric information were, without their knowledge, included in the Clearview AI Database at any time from January 1, 2016 to January 17, 2020 (the "Class Period") and who suffered no injury from Defendant's violation of Section 15(c) of BIPA other than statutory aggrievement in that there is no evidence that during the Class Period: (i) a photograph of the Class member was ever uploaded to the Clearview AI App by any user of the Clearview AI App; (ii) any user of the Clearview AI App sought to use the Clearview AI App and Database to identify them; and (iii) their biometric identifiers or biometric information in the Clearview AI Database were never disclosed to any users of the Clearview AI App or any third-parties.  (*Id., ¶*25.)

Plaintiffs' Complaint expressly states that neither the named Plaintiffs, nor any Class member suffered any injury (other than statutory aggrievement) as a result of Clearview's violation of § 15(c) of BIPA:

> During the Class Period, none of the Plaintiffs nor any Class Members suffered any injury as a result of the violations of Section 15(c) of BIPA other than the statutory aggrievement alleged in Paragraph 38.  (*Id.*, ¶39.)

---

[3]     Section 15(d) of BIPA provides, in pertinent part:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure[.] [740 ILCS 14/15(d).]

Plaintiffs further have defined their cause of action to preclude the possibility of any future injury to them or the Class members. Plaintiffs' individual claims and the Class Period are limited in time to Clearview's past conduct between January 1, 2016 and January 17, 2020. (*Id.*, ¶¶25, 34.)

Plaintiffs' Complaint, thus, alleges only a procedural violation of § 15(c)'s unqualified prohibition against profiting from a person's or a customer's biometric identifier or biometric information, unaccompanied by any particularized harm resulting from the violation and with no risk of future harm.

Plaintiffs, thus, make no claim that Clearview deprived them of their statutory rights under §§ 15(b)(1), (b)(2) or (b)(3) of BIPA,[4] which requires prior statutory disclosures to, and written consent from, individuals whose biometric data is collected or possessed in Illinois. Plaintiffs have also not alleged that Clearview violated Section 15(a) of BIPA, which requires a private entity to

---

[4]     Section 15(b) of BIPA provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. [740 ILCS 14/15(b).]

develop and comply with a publicly available, written policy regarding retention and destruction of the biometric information in its possession.[5]

In sum, Plaintiffs' Complaint:

(1)    alleges that "[d]uring the Class Period, none of the Plaintiffs nor any Class Member suffered any injury as a result of the violations of Section 15(c) of BIPA other than statutory aggrievement" (Complaint, ¶39);

(2)    defines the proposed Class as consisting of persons who "suffered no injury from Defendant's violation of Section 15(c) of BIPA other than statutory aggrievement (*id*. ¶25);

(3)    defines the proposed Class Period as referring only to Clearview's past conduct, thereby eliminating the threat of any future injury, (*id*. ¶¶25, 34); and

(4)    explicitly limits the relief sought to "statutory damages," (*id*. p. 11).

---

[5]    Section 15(a) of BIPA provides:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.  [740 ILCS 14/15(a).]

## Question Presented

Is discretionary review of the district court's remand decision warranted under 28 U.S.C. § 1453(c)(1) where the decision involves no important CAFA-related issue, nor any novel, unsettled, or incorrectly decided issue at all?

**Argument**

I.    **The Court Should Deny Discretionary Review Under § 1453(c)(1).**

   A.    **The District Court's Remand Decision Presents No CAFA-Related Issue.**

"[T]he purpose of § 1453(c)(1) is to develop a body of appellate law <u>interpreting CAFA</u>." *Coffey*, 581 F.3d at 1247 (emphasis added; brackets and internal quotation marks omitted). The legislative history emphasizes this principle and makes clear that the section is not intended "[a]s a general matter" to subject non-CAFA-related issues to appellate review. *Id.* (quoting S. Rep. No. 109–14, at 49).

Appellate courts establishing criteria for exercise of § 1453(c)(1) review have thus uniformly held that "a key factor in determining whether to accept an appeal is 'the presence of an important <u>CAFA-related</u> question' in the case." *Coleman*, 627 F.3d at 1100 (emphasis added), quoting *College of Dental Surgeons*, 585 F.3d at 38. As this Court stated in *Bullard*, "We grant this petition, because the legal issue is novel. It has not been addressed in this or any other circuit. The statute's [CAFA's] meaning should be settled, to avoid the risk that lengthy and expensive efforts in one judicial system or the other will be wasted." 535 F.3d at 761. Numerous other courts have similarly construed § 1453(c)(1). *See Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 334 (4th Cir. 2019) (criteria for accepting review include "(1) Whether the petition presents an important *CAFA-related question*; (2) Whether *the question* presented by the CAFA appeal petition is unsettled; (3) Whether the district court's jurisdictional decision under CAFA is incorrect, or at least fairly debatable; (4) Whether *the CAFA-related question* is consequential to the resolution of the particular class action; … (6) Whether *the CAFA-related question* is likely to recur….") (emphasis added); *Louisiana v. American Nat. Prop. Cas. Co.*, 746

F.3d 633, 636 (5th Cir. 2014) ("Because we recognized that this case presents an important CAFA-related question both for this case and for the other individual actions currently pending, and because the record before us was sufficiently developed, we granted permission to appeal."); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 91 (2014) (discussing circuit standards for accepting § 1453(c)(1) review and finding an abuse of discretion "[w]hen the CAFA-related question presented in an appeal from a remand order is 'important, unsettled, and recurrent'").

In its Petition, Clearview ignores the CAFA-related issue criterion for granting § 1453(c)(1) review and argues, in effect, that any novel issue – CAFA-related or not – warrants granting its Petition. Clearview quotes *Bullard*'s reference to a "novel" legal issue, Petition at 7, but omits (without any acknowledgement) the Court's reference to the importance of clarifying the CAFA "statute's meaning." 535 F.3d at 761. Plaintiffs submit that Clearview misconstrues this important aspect of the standard for granting § 1453(c)(1) review.

Here, the decision below involved no CAFA-related question, but rather dealt solely with the general Article III issue applicable to *any* federal action of whether "a bare procedural violation, divorced from any concrete harm, [is sufficient to] satisfy the injury-in-fact requirement of Article III." Remand Order at 2, quoting *Spokeo*, 136 S. Ct. at 1549. And, equally important, the Article III standing issue decided by the district court is the subject of well-established Seventh Circuit case law, including not only *Bryant*, but such recent decisions as *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018), and *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019). Significantly, Clearview does not identify a single case that conflicts with the district court's remand decision.

11

**B.     The District Court's Remand Decision
        Correctly Applied Settled Article III Standing Principles.**

      1.     The District Court Correctly Applied Established
              Article IIII Case Law, including *Bryant.*

Even if the district court's decision involved an important CAFA-related issue (or even if

§ 1453(c)(1) review is properly extended to non-CAFA-related issues), there is nothing novel,

unsettled, nor incorrect about the district court's remand decision that warrants the exercise of this

Court's discretionary appellate review authority.

The district court held that where, as here, Plaintiffs seek relief for a bare procedural

violation of § 15(c) and <u>affirmatively allege</u> that they suffered no harm (or "injury-in-fact"), Article

III standing does not exist.  (Remand Order at 4.)  That holding is firmly supported by established

Article III case law, including this Court's recent explication of this precise issue in *Bryant*.

Indeed, as noted above, another district court independently reached the exact same conclusion

about § 15(c):

> Plaintiffs' allegations are devoid of any particularized or concrete injury. ... Under
> the Supreme Court's guidance in *Spokeo*, as used by the Seventh Circuit in *Bryant*,
> Plaintiffs' claim under section 15(c) does not satisfy the requirements of Article III
> standing.

*Hazlitt*, No. 3:20-CV-421-NJR, 2020 U.S. Dist. LEXIS 210963, at *18-*19, included in Short

Appendix at A-26–A-35.

In *Bryant*, this Court considered whether individuals aggrieved by violations of §§ 15(a)

and 15(b) of BIPA have suffered the "injury-in-fact" needed to support Article III standing.  958

F.3d at 617.  The Court reached different conclusions with respect to the two sections, and the

reasoning and analysis employed by the Court directly – and correctly – informed the district

court's holding that no Article III standing exists for the violation of BIPA § 15(c) <u>as alleged</u> by Plaintiffs.

In *Bryant*, the Court affirmed the established law that "'a bare procedural violation [of a statute], divorced from any concrete harm,' does not 'satisfy the injury-in-fact requirement of Article III.'" *Id.* at 621, quoting *Spokeo*, 136 S. Ct. at 1548-49. Rather, "the plaintiff must show that the statutory violation presented an appreciable risk of harm to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Id.* (internal quotation marks omitted), quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017).

Section 15(b) of BIPA provides that before a private entity may collect and possess an individual's biometric data, it must provide the individual with an informed choice about whether to relinquish control of his or her data. In *Bryant*, the Court found that "the informed-consent regime laid out in [§] 15(b) is the heart of BIPA" and that a violation of § 15(b)'s required statutory disclosures or failure to obtain § 15(b)'s required statutory consent to the collection of biometric data "deprived [Bryant] of the ability to give the *informed* consent [§] 15(b) mandates." 958 F.3d at 626. These violations "inflicted the concrete injury BIPA intended to protect against, *i.e.* a consumer's loss of the power and ability to make informed decisions about the collection, storage and use of her biometric information." *Id.* at 627. This concrete injury satisfied the requirements for Article III standing, allowing Bryant's § 15(b) claim to proceed in federal court. *Id.*

The Court reached a different conclusion with respect to Bryant's claim based on § 15(a) of BIPA, which requires a private entity in possession of biometric data to develop a written policy, made available to the public, establishing a retention schedule and guidelines for destruction of the biometric data. A separate provision of § 15(a) further obligates private entities to comply

13

with their retention schedules and destruction guidelines, *id.*, but Bryant made no claim under that portion of § 15(a) and did not allege that she was harmed by the defendant's failure to comply with the policy. The entire text of § 15(a) is set forth above in footnote 5.

The Court held that the provision of § 15(a) on which Bryant's claim of a statutory violation was based was "not part of [BIPA's] informed-consent regime, and [that] Bryant alleges no particularized harm that resulted from [the defendant's] violation of section 15(a)." 958 F.3d at 626. Bryant "therefore lack[ed] standing under Article III to pursue that claim in federal court." *Id*. The district court properly held that the holding in *Bryant* is dispositive here. As with the provision of § 15(a) at issue in *Bryant*, the provisions of § 15(c) do not involve, in any way, BIPA's informed consent regime. Unlike BIPA §§ 15(b) and 15(d), the Illinois General Assembly's prohibition in § 15(c) on commercial exploitation of biometric data is not subject to a notice provision, nor excused by individualized consent. Thus, in contrast to §§ 15(b) and 15(d) of BIPA, which establish the individual's private right to control his or her biometric data by requiring the possessor of such data to give notice and obtain the individual's consent to its collection or dissemination, § 15(c) sets forth a general prohibition on any private entity's profiting from biometric data that private individuals have no right to control. Like any regulation or civil or criminal statute of general application, the prohibition imposed by § 15(c) runs for the benefit of the public and vindicates public rights.

Thus, unlike the plaintiff in *Bryant*, Plaintiffs here suffered no "informational" injury and were never deprived of their right to choose whether to allow their biometric data to be collected (§ 15(b)) or disseminated (§ 15(d)). *See, e.g.*, *Cothron v. White Castle Sys., Inc.*, No. 19 CV 00382, 2020 WL 3250706, at *4 (N.D. Ill. June 16, 2020) (finding standing under BIPA's § 15(d) because

§ 15(d), like § 15(b), "requires entities to obtain a person's consent when disclosing or disseminating an individual's biometric data" and thus "forms a piece of the 'informed-consent regime' at the heart of BIPA.").

> **2.    Plaintiffs Have Not Alleged Any Particularized Harm Resulting from Clearview's Violation of Section 15(c) of BIPA.**

Even if Plaintiffs' § 15(c) claim might be deemed to assert a violation of their own private rights, there would still be no Article III injury in this case. It is well-established that to have Article III standing – even where a statutory violation implicates a plaintiff's private rights – a plaintiff must <u>allege</u> particularized harm resulting from the violation. *See Bryant*, 958 F.3d at 626 (no Article III standing over § 15(a) claim, where plaintiff "alleges no particularized harm that resulted from" defendant's failure to adopt a public retention policy).

Plaintiffs do not allege that they suffered any form of particularized harm as a result of Clearview's violation of § 15(c). To the contrary, Plaintiffs have (i) affirmatively pled that their images were not matched and their biometric data was never disclosed in Illinois, (Complaint, ¶¶18, 20); (ii) defined the proposed Class to include only individuals whose images were never matched and whose biometric data have never been disclosed in Illinois, (*id*., ¶25); (iii) affirmatively pled that they and the proposed Class suffered no injury from Clearview's violation of § 15(c) other than statutory aggrievement, (*id*., ¶39); and (iv) precluded any claim for risk of future harm from the statutory violation by limiting their and the proposed Class's claims to Clearview's past conduct ending on January 17, 2020, (*id*., ¶¶25, 34). *Bryant* expressly precludes Article III standing where, as here, Plaintiffs allege no actual harm resulted from the statutory violation at issue. 958 F.3d at 626.

Indeed, the *Bryant* Court amended its original decision specifically to clarify that its holding that there was no standing for the claimed violation of BIPA § 15(a) was based on the claim <u>as alleged by the plaintiff</u>. Section 15(a) requires an entity in possession of biometric data to establish a public retention and destruction policy with respect to that data and further requires the entity to comply with that policy. Bryant limited her § 15(a) claim to the defendant's failure to establish the requisite policy and did not allege that she was harmed by defendant's failure to comply with the policy. Noting that its "analysis is … limited to the theory [Bryant] invoked," the Court ruled that there was no Article III standing over the § 15(a) claim, as pled by plaintiff, because "Bryant alleges no particularized harm that resulted from [the defendant's] violation of [§] 15(a)." *Id*. As the Court stated, "[i]t is possible … to plead oneself out of court." *Id*. at 625.

The Court's comments on the scope of its analysis were added after the defendant moved for rehearing of the original decision, which held simply that there was no Article III standing for § 15(a) claims. In support of its motion for rehearing, the defendant argued that a plaintiff could suffer harm from a violation of § 15(a) from a defendant's failure to comply with the policy required by the section. The Court amended its decision to make clear that its holding was based on the plaintiff's failure to plead such harm. *See* Order on petition for rehearing and rehearing *en banc* in *Bryant*, No. 20-1443, 2020 WL 6534581, at *1 (7th Cir. June 30, 2020).

The holding in *Bryant* is consistent with this Court's holdings in *Collier* and *Casillas*. In *Collier*, Plaintiffs brought a proposed class action in state court alleging that the defendant had committed a statutory violation of the Fair and Accurate Credit Transaction Act ("FACTA"), 15 U.S.C. § 1681c(g)(1), by printing their credit cards' expiration dates on transaction receipts.

The Court ordered the action remanded to state court based on the absence of any allegation in the plaintiffs' Complaint of any actual harm. The Court stated:

> The complaint did not describe any concrete harm that the plaintiffs had suffered from the printed receipts' exposure of their cards' expiration dates; no one, for example, had experienced credit-card fraud or identity theft.

889 F.3d at 895. Citing to established law that a complaint must contain "'sufficient factual allegations of an injury resulting from defendants' conduct' to state a plausible claim for relief," *id*. at 896, quoting *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016), the Court held that remand was required because "it is clear that Collier and Seitz's complaint did not sufficiently allege an actual injury." *Id*.; *accord Casillas*, 926 F.3d at 339 (plaintiff's allegation of "bare procedural violation" of the Fair Debt Collection Practices Act, unaccompanied by allegations of concrete harm, was "insufficient for purposes of Article III").

Each of these cases, like *Bryant*, involves a technical violation of a statute which failed to cause any actual harm to the plaintiff, and, in each case, this Court found no Article III standing. Clearview's contention in its Petition that the district court's decision creates a "rift" in the case law that needs resolution, Petition at 9, is unfounded. There is no "rift" on this issue.

At its core, Clearview's argument is that there is, per se, Article III standing for every violation of § 15(c) of BIPA, regardless of whether the party asserting that violation alleges that he or she suffered any "injury-in-fact." There is no merit to that contention. The district court correctly held, in accord with well-established precedent, that Plaintiffs' affirmative allegations in the Complaint that they suffered no injury (other than statutory aggrievement) from Clearview's violation of § 15(c) precludes any finding of Article III injury. Remand Order at 4.

**Conclusion**

For the foregoing reasons, Clearview's Petition for Permission to Appeal pursuant to 28 U.S.C. § 1453(c)(1) should be denied.

Dated:  November 12, 2020                                Respectfully submitted,


                                                        /s/ David S. Golub
                                                        _____

Daniel M. Feeney                                        David S. Golub
Miller Shakman Levine & Feldman LLP                          *Counsel of Record*
180 North LaSalle Street, Suite 3600                    Silver Golub & Teitell LLP
Chicago, IL 60601                                       184 Atlantic Street
Tel.  (312) 263-3700                                    Stamford, CT 06901
Fac. (312) 263-3270                                     Tel. (203) 325-4491
Email: dfeeney@millershkman.com                         Fac. (203) 325-3769
                                                        Email: dgolub@sgtlaw.com

                                                        Brian P. O'Meara
                                                        Kevin M. Forde
                                                        Kevin R. Malloy
                                                        Forde & O'Meara LLP
                                                        111 West Washington Street, Suite 1100
                                                        Chicago, IL 60602
                                                        Tel.  (312) 641-1441
                                                        Fac.  (312) 641-1288
                                                        Email:  bomeara@fordellp.com
                                                               kforde@fordellp.com
                                                               kmalloy@fordellp.com


                                                        *Counsel for Plaintiffs*.

18

FILED DATE: 5/27/2020 2:03 PM  2020CH04348

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MELISSA THORNLEY, DEBORAH BENJAMIN-KOLLER, and JOSUE HERRERA, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) No. _____<br>) |
| v. | ) JURY TRIAL DEMANDED<br>)<br>) |
| CLEARVIEW AI, INC. | )<br>) |
| Defendant | )<br>) |

### CLASS ACTION COMPLAINT

Plaintiffs Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera ("Plaintiffs"), individually and on behalf of all others similarly situated (collectively, the "Class"), bring the following Class Action Complaint pursuant to Sections 2-801 and 2-802 of the Illinois Code of Civil Procedure against Defendant Clearview AI, Inc. ("Clearview AI" or "Defendant") for redress of Defendant's improper sales in Illinois, for profit, of software technology containing, and allowing users to search, a database of Plaintiffs' and the Class's biometric identifiers and biometric information, in violation of Section 15(c) of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA" or the "Act").

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over Defendant in that Clearview AI has conducted the following business in Illinois and has engaged in the following conduct in violation of BIPA in the State of Illinois during the Class Period (as defined below in Paragraph 25):

      a.    Defendant Clearview AI has actively marketed its products at issue in this lawsuit – the Clearview AI App (as defined in Paragraph 7 below), the Clearview AI Database (as defined in Paragraph 7 below) and the software technology Clearview AI has developed to enable users of the Clearview AI

FILED DATE: 5/27/2020 2:03 PM    2020CH04348

App to search the Clearview AI Database – to prospective customers in Illinois including (without limitation) by delivering proposals, quotes and other marketing communications to prospective customers in Illinois; negotiating with prospective customers based in Illinois; offering trial use of the App and Database, and, on information and belief, through in-person meetings and telephone and email communications with prospective customers and co-marketers in Illinois;

b.    Defendant Clearview AI has, for profit, directly or through third parties, entered into agreements with customers based in Illinois for the use of the Clearview AI App in Illinois to search the Clearview AI Database;

c.    Defendant Clearview AI has received payments from customers based in Illinois for the customers' licensing and use of the Clearview AI App in Illinois to search the Clearview AI Database;

d.    Defendant Clearview AI has, as a sales marketing technique, provided the Clearview AI App to persons in Illinois on a trial basis to search the Clearview AI Database;

e.    Defendant Clearview AI has, for profit, sold its products at issue in this lawsuit to over 100 customers based in Illinois, licensing or otherwise authorizing such customers and their employees to use the Clearview AI App in Illinois to conduct searches of the Clearview AI Database;

f.    Defendant Clearview AI has provided follow-up support services to licensed users of the Clearview AI App based in Illinois;

g.    Defendant Clearview AI has advertised and promoted, or caused or approved the advertising and promotion of, its products in Illinois;

h.    Defendant Clearview AI has entered into one or more agreements with persons or businesses to market its products, including the Clearview AI App and Database, in Illinois, authorizing such persons or businesses to serve as its duly-authorized agents and representatives for such purpose and knowing and intending that such persons or businesses would market and provide the Clearview AI App to customers (and prospective customers) for use in Illinois to search the Clearview AI Database;

i.    Defendant Clearview AI has, through its duly-authorized agents and representatives, actively marketed the Clearview AI App, the Clearview AI Database and the software technology it has developed to enable users of the Clearview AI App to search the Clearview AI Database, to prospective customers in Illinois including (without limitation) by delivering proposals, quotes and other marketing communications to prospective customers in Illinois; negotiating with prospective customers based in Illinois; and

FILED DATE: 5/27/2020 2:03 PM   2020CH04348

through in-person meetings and telephone communications with its representatives and agents and prospective customers in Illinois;

j.      Defendant Clearview AI has, for profit, provided the Clearview AI App, the Clearview AI Database and its software technologies to third parties in Illinois to enable such third parties to market and deliver such products to persons and businesses in Illinois, knowing and intending that the Clearview AI App would be used to run searches of the Clearview AI Database in Illinois; and

k.      Defendant Clearview AI has conducted searches of servers based in Illinois and downloaded photographs to its Database from servers based in Illinois.

2.      Venue is proper in Cook County because Defendant conducted business during the Class Period in this State, and in particular in Cook County, and committed the statutory violations alleged herein in Cook County and throughout Illinois.

## PARTIES

### A.      Plaintiffs

3.      At all times mentioned herein, including throughout the Class Period, Plaintiff Melissa Thornley has been, and is to date, a citizen of the State of Illinois, residing in Cook County.

4.      At all times mentioned herein, including throughout the Class Period, Plaintiff Deborah Benjamin-Koller has been, and is to date, a citizen of the State of Illinois, residing in Cook County.

5.      At all times mentioned herein, including throughout the Class Period, Plaintiff Josue Herrera has been, and is to date, a citizen of the State of Illinois, residing in Cook County.

### B.      Defendant

6.      Defendant Clearview AI, Inc. is a business incorporated under the laws of the State of Delaware that does business in the State of Illinois, including in Cook County.

FILED DATE: 5/27/2020 2:03 PM   2020CH04348

**FACTUAL ALLEGATIONS**

7.      Defendant Clearview AI is an artificial intelligence company founded in 2016 that secretly created a database of over three billion facial scans (the "Clearview AI Database" or "Database") and a facial recognition application (the "Clearview AI App" or "App") and technologies that enable App users in Illinois to identify individuals by comparing the individuals' facial scans to the facial scans of individuals included in the Clearview AI Database.

8.      Defendant Clearview AI created its Database of facial scans through the use of proprietary algorithms that enable it to convert photographs in the Database to biometric facial recognition identifiers.  Defendant obtained the photographs for its Database by "scraping" photographs posted and accessible on the internet from, among other sources, social media platforms Facebook, Twitter, Instagram, and LinkedIn, video sharing platform YouTube, and payment platform Venmo. ("Scraping" is the automated extraction of data from websites.)

9.      For a number of years prior hereto and to the present time, Plaintiff Thornley maintained public social media accounts containing accessible photographs of her facial image on the Facebook, Instagram, and LinkedIn social media platforms.

10.     For a number of years prior hereto and to the present time, Plaintiff Benjamin-Koller maintained social media accounts containing accessible photographs of his facial image on the Facebook, Instagram, and Twitter social media platforms.

11.     For a number of years prior hereto and to the present time, Plaintiff Herrera maintained accounts containing accessible photographs of his facial image on the Facebook, Instagram, and LinkedIn social media platforms, the digital payment platform Venmo, and on the YouTube video-sharing platform.

FILED DATE: 5/27/2020 2:03 PM   2020CH04348

12.     Because Plaintiffs' photographs were posted and accessible on one or more of the platforms scraped by Defendant Clearview AI, Plaintiffs' photographs were collected into the Clearview AI Database, converted to biometric facial recognition identifiers and maintained in the Database during the Class Period in both their original and biometric formats.

13.     Similarly, the photographs of the millions of other Illinois residents in the Class were posted and accessible on one or more of the platforms scraped by Defendant Clearview AI, and, as a result, collected into the Clearview AI Database, converted to biometric facial recognition identifiers and maintained in the Database during the Class Period in both their original and biometric formats.

14.     During the Class Period, Defendant Clearview AI owned and possessed and offered for sale in Illinois the Clearview App and Database (and Clearview AI's supporting technologies) and furnished and provided possession, control, dominion and access to its App and Database to third parties in Illinois, for sale to customers in Illinois.

15.     During the Class Period, Defendant Clearview AI, directly and through its third-party agents and representatives, sold access to Plaintiffs' and the Class' biometric identifiers and biometric information in the Clearview AI App and Database to over 100 customers based in Illinois or otherwise profited in Illinois from such biometric identifiers and biometric information.

16.     During the Class Period, Defendant Clearview AI, for profit, directly or through third parties, licensed or otherwise authorized persons, businesses and other entities based in Illinois to use the Clearview AI App in Illinois to search the Clearview AI Database to identify individuals whose photographs were scraped to the Database and converted to biometric identifiers.

FILED DATE: 5/27/2020 2:03 PM   2020CH04348

17.     During the Class Period, Defendant Clearview AI, for profit, authorized third parties to license or sell access to the Clearview AI App and Database to persons and business based in Illinois and provided the Clearview AI App and Database to such third parties for such purpose.

18.     During the Class Period, persons in Illinois, who were provided access and authorization to use the Clearview AI App in Illinois by Defendant, used the Clearview AI App in Illinois to identify unknown individuals (or confirm the identity of known individuals) by utilizing the following process:  the App user in Illinois has uploaded a photograph of an individual the user is seeking to identify; Clearview AI's facial recognition technologies scanned the face in the uploaded photograph and converted the facial geometries of the individual pictured in the photograph into mathematical formulas or "vectors;"  Clearview AI's technologies then identified the individual in the photograph by comparing the newly-created facial geometries with facial vectors of individuals whose photographs had previously been stored and converted to biometric form in Clearview AI's Database;  the Clearview AI App then displayed all photographs in the Clearview AI's Database of the matched individual to the App user.

19.     During the Class Period, persons in Illinois who were, for profit, provided the Clearview AI App by Defendant conducted searches in Illinois on their mobile devices and computers of Clearview AI's Database.

20.     Plaintiffs are unaware of any user who uploaded photographs of any of the Plaintiffs nor who sought to identify any of the Plaintiffs by using the Clearview AI App during the Class Period. It is highly probable that no user has uploaded photographs of any of the Plaintiffs nor sought to identify any of the Plaintiffs by using the Clearview AI App during the Class Period.

6

FILED DATE: 5/27/2020 2:03 PM     2020CH04348

21.     During the Class Period, Plaintiffs' biometric identifiers or biometric information in the Clearview AI App were not disclosed to any users of the Clearview AI App or to any third-parties.

22.     During the Class Period, none of the Plaintiffs or Class members knew (or had reason to suspect) that their biometric identifiers or biometric information were contained in the Clearview AI Database.

23.     Section 15(c) of BIPA prohibits a private entity in possession of biometric identifiers or biometric information from selling, leasing, trading, or otherwise profiting in Illinois from a person's biometric identifier or biometric information. 740 ILCS 14/15(c).

24.     During the Class period, Defendant Clearview AI, individually and through its agents and representatives, sold access to the Clearview AI Database containing Plaintiffs' biometric identifiers or biometric information to customers in Illinois or otherwise profited from Plaintiffs' biometric identifiers or biometric information in Illinois in knowing violation of Section 15(c) of BIPA.

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs bring this action pursuant the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, on their own behalf and as representatives of all other similarly-situated individuals, defined as follows (the "Class"):

> All current Illinois citizens whose biometric identifiers or biometric information were, without their knowledge, included in the Clearview AI Database at any time from January 1, 2016 to January 17, 2020 (the "Class Period") and who suffered no injury from Defendant's violation of Section 15(c) of BIPA other than statutory aggrievement in that there is no evidence that during the Class Period:  (i) a photograph of the Class member was ever uploaded to the Clearview AI App by any user of the Clearview AI App; (ii) any user of the Clearview AI App sought to use the Clearview AI App and Database to identify them; and (iii) their biometric

FILED DATE: 5/27/2020 2:03 PM   2020CH04348

identifiers or biometric information in the Clearview AI Database were never disclosed to any users of the Clearview AI App or any third-parties.[1]

26.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because: (1) the class is so numerous that joinder of all member is impracticable ("Numerosity"); (2) there are questions of law or fact that are common to the class ("Commonality"); (3) Plaintiffs' claims are typical of the claims of the class ("Typicality"); and (4) Plaintiffs will fairly and adequately protect the interest of the class ("Adequate Representation").

27.     **Numerosity**. The Class likely consists of millions of individuals, and the members can be identified through Defendant's records. The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but Facebook, Inc., one of the social media platforms scraped by Defendant Clearview AI, has recently disclosed that it has approximately 6 million Illinois residents with photographs on its platform. Individual joinder in this case is impracticable.

28.     **Predominant Common Questions**. The Class's claims present common questions of law and fact and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

    a.      Whether Defendant Clearview AI was in possession of Plaintiffs' and the Class's biometric identifiers or biometric information during the Class Period;

    b.      Whether, during the Class Period, Defendant Clearview AI sold access to Plaintiffs' and the Class's biometric identifiers or biometric information to customers in Illinois or otherwise profited from Plaintiffs' and the Class's biometric identifiers or biometric information in Illinois;

    c.      Whether, during the Class Period, Defendant Clearview AI violated Section 15(c) of BIPA; and

---

[1]     Plaintiffs have defined the Class based on currently available information and reserve the right to amend the definition of the Class, including, without limitation, the Class Period.

FILED DATE: 5/27/2020 2:03 PM     2020CH04348

d.     Whether Defendant Clearview AI's violations of Section 15(c) of BIPA were committed intentionally, recklessly, or negligently.

29.     **Typicality**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class.  Plaintiffs and Class members were aggrieved as a result of Defendant's violations of Section 15(c) of BIPA in a manner that is uniform across the Class.

30.     **Adequate Representation**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel that is competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.  Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class.

31.     **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. It would be unduly burdensome to the Court for each class member to pursue their claims individually. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

32.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

FILED DATE: 5/27/2020 2:03 PM    2020CH04348

## CLAIM FOR RELIEF

**Violations of Section 15(c) of the Illinois Biometric Information Privacy Act
(On Behalf of Plaintiffs and the Class)**

33.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

34.     During the Class Period, Defendant, acting for profit, individually and through its agents and representatives, sold access to Plaintiffs' and the Class's biometric identifiers or biometric information in the Clearview AI Database  to customers based in Illinois or otherwise profited in Illinois from Plaintiffs' and the Class's biometric identifiers or biometric information included in the Clearview AI Database.

35.     Were it not for the inclusion of Plaintiffs' and the Class's biometric identifiers or biometric information in the Clearview AI Database, Defendant would not have been able to so profit.

36.     At all times mentioned herein, Defendant Clearview AI was aware of the provisions of Section 15(c) of BIPA that prohibit a private entity in Illinois, such as Clearview AI, from selling, leasing, trading, or otherwise profiting in Illinois from a person's biometric identifier or biometric information.

37.     Defendant Clearview AI, during the Class Period, intentionally sold access to Plaintiffs' and the Classes biometric identifiers or biometric information to customers in Illinois or otherwise profited in Illinois from Plaintiffs' and the Classes biometric identifiers or biometric information, in violation of Section 15(c) of BIPA.

38.     Pursuant to Section 20 of BIPA, Plaintiffs and the Class are statutorily aggrieved by Defendant's violations of Section 15(c) of BIPA.

FILED DATE: 5/27/2020 2:03 PM   2020CH04348

39.    During the Class Period, none of the Plaintiffs nor any Class Members suffered any injury as a result of the violations of Section 15(c) of BIPA other than the statutory aggrievement alleged in Paragraph 38.

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

a.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera as Class Representatives, and appointing Silver Golub & Teitell LLP, Miller Shakman Levine & Feldman LLP, and Forde & O'Meara, LLP as Class Counsel;

b.    Declaring that Defendant's actions, as set forth above, violate Section 15(c) of BIPA;

c.    Declaring that Defendant's actions, as set forth above, were intentional and/or reckless;

d.    Awarding statutory damages of $5,000 per Plaintiff and Class member for each intentional and/or reckless violation of Section 15(c) by the Defendant pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 per Plaintiff and Class member for each negligent violation of Section 15(c) by the Defendant pursuant to 740 ILCS 14/20(1);

e.    Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

f.    Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

g.    Awarding such other and further equitable relief as BIPA, equity, and justice may require.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

FILED DATE: 5/27/2020 2:03 PM   2020CH04348

Dated:   May 27, 2020

Respectfully submitted,

MELISSA THORNLEY
DEBORAH BENJAMIN-KOLLER
JOSUE HERRERA

/s/ Daniel M. Feeney
One of their attorneys

Daniel M. Feeney
Zachary J. Freeman
Miller Shakman Levine & Feldman LLP
Firm ID: 90236
180 North LaSalle Street, Suite 3600
Chicago, IL 60601
Tel. (312) 263-3700
Fax (312) 263-3270
Email: dfeeney@millershakman.com
          zfreeman@millershakman.com

David S. Golub (*pro hac vice forthcoming*)
Steven L. Bloch (*pro hac vice forthcoming*)
Ian W. Sloss (*pro hac vice forthcoming*)
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06901
Tel. (203) 325-4491
Fax (203) 325-3769
Email: dgolub@sgtlaw.com
          sbloch@sgtlaw.com
          isloss@sgtlaw.com

Kevin M. Forde
Brian P. O'Meara
Kevin R. Malloy
Forde & O'Meara LLP
Firm ID: 64371
111 West Washington Street
Suite 1100
Chicago IL 60602
(312) 641-1441
(312) 641-1288 (fax)
kforde@fordellp.com
bomeara@fordellp.com
kmalloy@fordellp.com

FILED DATE: 5/27/2020 2:03 PM   2020CH04348

## <u>SUPREME COURT RULE 222(b) DAMAGES AFFIDAVIT</u>

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that this civil action seeks in excess of $50,000 on behalf of the Plaintiffs and the proposed Class.

Dated:   May 27, 2020

Respectfully submitted,

MELISSA THORNLEY
DEBORAH BENJAMIN-KOLLER
JOSUE HERRERA

/s/ Daniel M. Feeney
One of their attorneys

Daniel M. Feeney
Zachary J. Freeman
Miller Shakman Levine & Feldman LLP
Firm ID: 90236
180 North LaSalle Street, Suite 3600
Chicago, IL 60601
Tel. (312) 263-3700
Fax (312) 263-3270
Email: dfeeney@millershakman.com
        zfreeman@millershakman.com

David S. Golub (*pro hac vice forthcoming*)
Steven L. Bloch (*pro hac vice forthcoming*)
Ian W. Sloss (*pro hac vice forthcoming*)
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06901
Tel. (203) 325-4491
Fax (203) 325-3769
Email: dgolub@sgtlaw.com
        sbloch@sgtlaw.com
        isloss@sgtlaw.com

Kevin M. Forde
Brian P. O'Meara
Kevin R. Malloy
Forde & O'Meara LLP
Firm ID: 64371
111 West Washington Street
Suite 1100
Chicago IL 60602
(312) 641-1441
(312) 641-1288 (fax)
kforde@fordellp.com
bomeara@fordellp.com
kmalloy@fordellp.com

13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MUTNICK, for himself and others similarly situated, | ) ) ) | |
| | ) | Case No. 20 C 512 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| | ) | Magistrate Judge Maria Valdez |
| CLEARVIEW AI, INC.; HOAN TON-THAT; RICHARD SCHWARTZ; and CDW GOVERNMENT LLC | ) ) ) | |
| | ) | |
| Defendants. | | |
| | | |
| ANTHONY HALL, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | Case No. 20 C 846 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| CDW GOVERNMENT LLC, and CLEARVIEW AI, INC., | ) ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF RICHARD SCHWARTZ

I, Richard Schwartz, hereby declare:

1.     I am the President of Clearview AI, Inc. ("Clearview").  My current responsibilities at Clearview include managing sales.  I have personal knowledge of the facts described below, and if called as a witness, could and would testify competently thereto.

2.     I am a resident of New York.  I serve as the primary caregiver to a close relative who has a serious medical condition.  Due to this commitment, I infrequently leave New York.

3.     I do not reside, pay taxes, or own any property in Illinois.  I do not have an Illinois driver's license or an Illinois bank account.  I have not traveled to Illinois in the past five years.

4.      I have never traveled to Illinois to conduct Clearview business.

5.      Clearview is a Delaware corporation with its headquarters and principal place of business in New York.

6.      Clearview is a technology company that collects publicly available images on the internet and organizes them into a searchable database, which can then be searched on an app by licensed users.  Clearview does not share biometric information with its users.

7.      Clearview's technology searches the "open web" and public sources for image files, and downloads the files and webpage URL into a database.  Anyone with internet capability is able to access the files that Clearview collects for use in its database.  The images collected by Clearview were accessible to Clearview from its place of business in New York.

8.      Clearview has eight full-time employees, the majority of whom work in New York, and none of whom are in Illinois.

9.      The servers hosting the data necessary for Clearview's business are located in New York.  Some of Clearview's servers are also located in New Jersey.  The publicly available images collected by Clearview are stored on these servers.

10.      Clearview has no employees, real estate, servers, facilities, or offices in Illinois, nor is it registered to do business in Illinois.

11.      Clearview does not target Illinois through advertising and marketing or the use of sales and service representatives.  Clearview's services and app are marketed and available nationwide.

12.      Litigation is pending against Clearview in the U.S. District Court for the Southern District of New York, including the cases *Calderon v. Clearview AI, Inc.*, *Burke v. Clearview AI,*

*Inc.*, *Broccolino v. Clearview AI, Inc.*, and *McPherson v. Clearview AI, Inc.*  The complaints for these cases are attached to this declaration as Exhibit 1, Exhibit 2, Exhibit 3, and Exhibit 4.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 27, 2020.

New York, New York

April 27, 2020.

_____

Richard Schwartz

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAVID MUTNICK, for himself and others similarly situated, | ) )  |
| Plaintiff, | ) ) Case No. 20 C 512 ) |
| v. | ) ) Judge Sharon Johnson Coleman ) |
| CLEARVIEW AI, INC; HOAN TON-THAT; RICHARD SCHWARTZ; and CDW GOVERNMENT LLC, | ) ) ) ) ) |
| Defendants. | ) |

**DECLARATION OF THOMAS MULCAIRE**

I, Thomas Mulcaire, hereby declare:

1.     I am General Counsel at Clearview AI, Inc. ("Clearview"), and I have served in this role since September 2019.  My duties as General Counsel include planning and executing our legal and regulatory compliance strategy, handling contractual matters, and managing outside counsel.  I am familiar with Clearview's operations, including its information technology and sales operations.  I have personal knowledge of the facts described below, and if called as a witness, I could and would testify competently thereto.

***Clearview's Operations.***

2.     Clearview is a Delaware corporation with its headquarters and principal place of business in New York.

3.     Clearview is a technology company that collects publicly available images on the internet.  Clearview organizes these images into a searchable database, which can then be searched remotely by licensed users on the Clearview app.

4.     Clearview's technology searches the "open web" and public sources for image files, and downloads the files and webpage URL into a database. Anyone with internet capability is able to access the files that Clearview downloads in its database. Any images downloaded by Clearview are stored on Clearview's servers located in New York and New Jersey.

5.     Clearview downloads images blindly; that is, without knowledge of who the subject of the image is.   Clearview cannot associate an image with a specific person's identity in any automated fashion.

6.     At present, Clearview offers only an app providing access to its searchable database of images.  Clearview AI does not market, license, or sell cameras or any other product.

7.     Clearview does not have any employees, real estate, servers, bank accounts, or facilities in Illinois.

8.     As described in more detail below, Clearview's customers are currently limited to non-Illinois law enforcement and government entities.

9.     To run a search, a user accesses the app or website interface and uploads a photo in their possession, and the Clearview database searches for similar images, returning matching results just as a Google images search does.  Clearview does not return the names of any individuals, just a thumbnail of a matching photos, with a link to the webpage containing the matching photo.

10.     Clearview does not sell, lease, trade, or disseminate any biometric information to its customers.

11.     Under Clearview's current user agreements, customers are required to agree to certain terms including, but not limited to:

      a.   Users may use the app only for legitimate law enforcement and investigative purposes;

2

A-22

    b.   Users may not use the service to research or identify any individuals residing or located in the state of Illinois, U.S.A.;

    c.   Users may not use the service for any commercial purpose and may not sell, market, or license any photograph or other information discovered by using the app.

    d.   Each user represents that it is authorized to use the service by a governmental agency or similar authority.

    e.   Each user agrees that their use will be monitored by a single person within their organization, who will report to Clearview any impermissible uses of the service.

12.     To the best of Clearview's knowledge, it has not experienced a cybersecurity event or other data security incident that resulted in the unauthorized access to or use of any biometric information or any of the photographs Clearview has collected from the Internet.

13.     Clearview takes cybersecurity seriously.  Clearview stores separately the publicly available photos Clearview downloads from the internet and the image vectors (the numerical representations of a person's facial geometry in a particular image) that Clearview generates from the photos that it downloads.  All Clearview data is stored in a secure data center in the United States.  The respective storage repositories are only accessible to a limited group of employees with the highest access privileges.

14.     Clearview has implemented an internal cybersecurity review of our network infrastructure to detect and remediate vulnerabilities.  Clearview also has begun a bug bounty program whereby Clearview pays ethical hackers to identify potential security issues, which can then be remediated.  Clearview has added additional user password strengthening and verification requirements to its app, and has introduced two-factor authentication to its web service.  Clearview is currently in the midst of a comprehensive overhaul of its application and data storage systems.

*Clearview's Voluntary Actions*

15.     As part of Clearview's ongoing business operations, it has decided to take certain changes to its business practices.

16.     Clearview is in the process of cancelling the accounts of *every* remaining user who was not either a law enforcement body or other federal, state, or local government department, office or agency.  At the same time, Clearview is in the process of cancelling all user accounts belonging to *any* entity located in Illinois.

17.     All photos in Clearview's database that were geotagged as having been uploaded in Illinois, or that have metadata, known as exif data, associating them with a geolocation within Illinois (the "Blocked Illinois Photos"), have been blocked from appearing in any search results. No one can query the database in a manner that will return those images.  The Blocked Illinois Photos are subject to a document retention program at Clearview, which requires that they be preserved for the purpose of Clearview's ongoing litigation, such as this one.

18.     No Clearview employees can currently search Clearview's database for the Blocked Illinois Photos.  The employees with access to the photo and image vector databases have signed documentation stating that they understand that Clearview is storing the Blocked Illinois Photos for purposes related to ongoing litigation, and have agreed that they will not use the Blocked Illinois Photos for any other purpose.

19.     Additionally, Clearview is in the process of modifying its search system so that user-uploaded images ("User Images") with location metadata associating the image with Illinois cannot initiate a search using the User Image.

20.     Clearview has also included language in its user agreements to prohibit users from uploading photographs of individuals they know or reasonably believe to be Illinois residents.

4

A-24

21.    Clearview has implemented a block on logins to its service from IP addresses associated with locations in Illinois to the greatest extent reasonably feasible.

22.    Clearview has completed certain technical modifications to its collection methods to avoid collecting photos of Illinois residents in the future.  First, Clearview has constructed a technical "geofence" around Illinois.  Any photo Clearview collects whose metadata bears longitude and latitude data within Illinois will not be rendered into a searchable image vector or included in Clearview's searchable database.

23.    Second, Clearview is blocking collection from pages with URLs or page titles that contain the terms "Chicago" and "Illinois", and is in the process of adding additional key terms to this blocking.  These pages are not processed into Clearview's searchable database.  Likewise, Clearview search results from webpages with URLs containing those same keywords that are currently in Clearview's database are not returned in response to search queries.

24.    Clearview also is in the process of modifying its collection technology to prevent webpages hosted on servers with Illinois-associated IP addresses from being processed into its searchable database.

25.    Clearview will be implementing an opt-out mechanism for any Illinois individuals to be removed from Clearview search results.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 6, 2020.

**New York, New York**
**May 6, 2020.**

*Thomas Mulcaire*
_____
Thomas Mulcaire

5

No *Shepard's* Signal™
As of: November 12, 2020 10:08 PM Z

# *Hazlitt v. Apple Inc.*

United States District Court for the Southern District of Illinois

November 12, 2020, Decided

Case No. 3:20-CV-421-NJR

**Reporter**
2020 U.S. Dist. LEXIS 210963 *

ROSLYN HAZLITT, JANE DOE, by and through Next Friend JOHN DOE, RICHARD ROBINSON, and YOLANDA BROWN, on behalf of themselves and all other persons similarly situated, Plaintiffs, v. APPLE INC., Defendant.

**Notice:** Decision text below is the first available text from the court; it has not been editorially reviewed by LexisNexis. Publisher's editorial review, including Headnotes, Case Summary, Shepard's analysis or any amendments will be added in accordance with LexisNexis editorial guidelines.

# Core Terms

biometric, identifiers, collecting, facial, scans, users, photographs, concrete, particularized, geometry, allegations, private entity, stored, destruction, violations, possessed, profiting, damages, motion to dismiss, technology, retention, qualify, argues, reckless, guidelines, capturing, software, subject matter jurisdiction, federal court, injury-in-fact

# Opinion

 **[\*1] MEMORANDUM AND ORDER**

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss filed by Defendant Apple Inc. (Doc. 19). Defendant seeks dismissal of the Complaint for failure to state a claim under *Rule 12(b)(6)*. Alternatively, Defendant moves to dismiss Count II for lack of subject matter jurisdiction under *Rule 12(b)(1)*. For the reasons set forth below, the motion is granted in part and denied in part.

**FACTUAL ANDPROCEDURALBACKGROUND**

On March 2, 2020, Plaintiffs Roslyn Hazlitt, Jane Doe, a minor, by and through Next Friend John Doe, Richard Robinson, and Yolanda Brown ("Plaintiffs") filed a putative Class Action Complaint against Defendant Apple Inc. ("Apple"), in the Circuit Court for the Twentieth Judicial Circuit in St. Clair County, Illinois. Within the Complaint, Plaintiffs allege violations of Illinois' Biometric Information Privacy Act

(BIPA), *740 ILL. COMP. STAT. § 14/1 et seq.* (Doc. 1-1). Specifically, Plaintiffs allege Apple violated *sections 14/15(a)-(c)* of BIPA by collecting, possessing, and profiting from their facial geometries, which qualify as biometric identifiers and biometric information (*Id.* at ¶¶ 1, 3).

**A. The Illinois Biometric Information Privacy Act**

In 2008, Illinois passed BIPA due to concerns with emerging technology and **[\*2]** the increasing collection and use of biometrics in the business and security screening sectors. The Illinois legislature recognized that unlike other personal identifiers, like social security numbers, biometrics are biologically unique to each individual and cannot be altered or changed once compromised. If this data is compromised, due to the sensitive nature of biometrics, an individual is at heightened risk for identity theft and lacks recourse. *See 740 ILL. COMP. STAT. §§ 14/5(a)-(c)*. The Illinois legislature observed an overwhelming majority of the public is wary of the use of biometrics when such information is tied to finances and other personal information. While the full ramifications of biometric technology are unknown, BIPA is intended to serve public welfare, security, and safety by regulating the

"collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *See* 740 ILL. COMP. STAT. §§ 14/5(d)-(g).

BIPA regulates private entities or "any individual, partnership, corporation, limited liability company, association, or other group, however organized." *See* 740 ILL.

COMP. STAT. §§ 14/10-20. BIPA requires all private entities in possession of biometric identifiers or biometric information to "develop **[*3]** a written policy, made available to the

public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity." 740 ILL. COMP. STAT. § 14/15(a). Further, private entities are prohibited from collecting, capturing, purchasing, or receiving through trade, or otherwise obtaining a person's biometric identifier or biometric information unless it informs the subject in writing with the specific purpose and length of time disclosed, and receives a written release, *i.e.*, informed written consent. 740 ILL. COMP. STAT. §§ 14/10, 15(b). Moreover, BIPA prohibits private entities from selling, leasing, trading, or otherwise profiting from a person's or customer's biometric identifier or information in their possession. 740 ILL. COMP. STAT. § 14/15(b).

BIPA's definition of "biometric identifier" includes "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILL. COMP. STAT. § 14/10. BIPA excludes writing samples, written signatures, photographs, human biological samples for valid scientific testing or medical uses, demographic data, tattoo descriptions, **[*4]** and physical descriptions from the definition for "biometric identifier." *Id.* The Act defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* BIPA further narrows the definition by not including "information derived from items or procedures excluded under the definition of biometric identifiers." *Id.*

The Illinois legislature devised BIPA to protect consumers against the threat of

irreparable privacy violations, identity theft, and economic injuries stemming from the use biometric

identifiers and biometric information by private entities. Notably, as a matter of state law, BIPA creates a private right of action for "[a]ny person aggrieved by a violation" of the outlined provisions. 740 ILL. COMP. STAT. § 14/20.

**B. Plaintiffs' Complaint and Procedural Background**

Plaintiffs allege Apple violated sections 14/15(a)-(c) of BIPA by collecting, possessing, and profiting from their facial geometries and associated data, which qualify as biometric identifiers and biometric information (Doc. 1-1 at ¶¶ 1, 3).

Facial recognition or "faceprinting" uses biological characteristics to verify an individual's identity **[*5]** by extracting an individual's face geometry data in order to confirm a subsequent match of the individual's face (*Id.* at ¶ 44). Geometric attributes of faces include distance between the eyes, width of the nose, and other features (*Id.* at ¶ 75). Face geometry is a physiological characteristic and qualifies as a "biometric identifier" under BIPA (*Id.* at ¶ 26).

Plaintiffs allege Apple's Photos app employs a proprietary software and facial recognition technology to scan individual face geometries from a user's photographs creating a unique "faceprint" for every person detected (*Id.* at ¶¶ 2, 27, 67, 77). Apple's devices use facial recognition technology to add frequently detected faces to the user's "People" album within the Photos app (*Id.* at ¶ 67). Further, Apple pre-installs the Photos app on all devices including phones, tablets, and computers, and the app cannot be removed or modified (*Id.* at ¶¶ 2, 64). This feature of the Photos app allegedly enables users to "recognize the people, scenes, and objects in [photographs]" and easily sort or

find images of their "favorite subjects-the people in [their lives]" (*Id.* at ¶¶ 80, 81, 83). Plaintiffs also allege that the Photos app applies an **[*6]** algorithm to specifically

identify the Apple device user, which creates biometric information as defined by BIPA (*Id.* at ¶ 101). Moreover, device users can "tag" and input names for each of the faces detected in the People album (*Id.* at ¶¶ 146, 147). Apple does not store or transfer all user biometric identifiers or biometric information on its servers, but rather, as Plaintiffs allege, on each Apple device locally in a facial recognition database in the solid-state memory on the device (*Id.* at ¶¶ 71, 105, 179).

Plaintiffs allege this conduct presents an imminent threat of serious harm to Plaintiffs and the proposed

class, as Apple does not delete the biometric data it collects on the devices, even discarded Apple devices (*Id.* at ¶ 130). Moreover, Plaintiffs cannot prevent their devices from collecting their unique and sensitive biometric data (*Id.* at ¶ 132). And because this information is stored on individual devices, Plaintiffs and the class members face the imminent threat of disclosure of their biometric data as the result of a data breach on any Apple device on which their biometric data is stored (*Id.* at ¶ 133).

Each named Plaintiff is a resident of Illinois (*Id.* at ¶¶ 10-13). **[*7]** According to the Complaint, each named Plaintiff has used an Apple device to take or store photographs of themselves or others using the Photos app (*Id.* at ¶¶ 2, 143). Furthermore, each named Plaintiff had his or her facial geometry scanned from the photographs and their biometric data collected, stored, and used by Apple (*Id.* at ¶ 14). Apple is a California corporation conducting business throughout Illinois (*Id.* at ¶ 15).

Plaintiffs assert three counts of BIPA violations, *740 ILL. COMP. STAT. §§ 14/15(a)*-

(c). In Count I, Plaintiffs claim Apple violated BIPA *section 14/15(b)* by collecting Plaintiffs' and Class Members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information, without first notifying Plaintiffs in writing and obtaining informed consent (*Id.* at ¶¶ 162-164). In Count II, Plaintiffs assert Apple violated BIPA *section 14/15(a)* by possessing biometric identifiers and biometric information without creating and following a written, publicly available policy with retention schedules and destruction guidelines (*Id.* at ¶ 171). In Count III, Plaintiffs allege Apple violated BIPA *section 14/15(c)* by profiting from biometric identifiers and biometric information it possessed, through marketing and **[*8]** selling its devices based upon claims of photograph sorting technology (*Id.* at ¶¶ 179-181).

Plaintiffs seek to represent a class consisting of all Illinois citizens whose faces appeared in one or more photos taken or stored on their own, or someone else's, Apple device using the Photos app from March 4, 2015, until present (*Id.* at ¶ 153). On behalf of themselves and the putative class, Plaintiffs seek actual damages, statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to *740 ILL. COMP. STAT. § 14/20(2)*, statutory damages of $1,000 for each negligent violation of BIPA pursuant to *740 ILL. COMP.*

*STAT. § 14/20(1)*, an order enjoining Apple from further violating BIPA, attorneys' fees and costs, and pre- and post-judgment interest (*Id.* at ¶ 42).

In the motion before the Court, Apple argues that Plaintiffs have failed to state a claim under BIPA because: (1) the alleged scans of face geometry are derived from photos and not linked to identifiable individuals; (2) facial recognition takes place solely on the device; (3) Plaintiffs lack standing under Article III to pursue the section 15(a) claim in

Count II; (4) Plaintiffs fail to allege that Apple sold or profited from biometric identifiers or biometric information; and (5) Plaintiffs **[*9]** fail to allege any factual support for an intentional or reckless violation of BIPA as necessary to sustain the request for enhanced statutory damages. The Court considers each of these arguments in turn.

**SUBJECT MATTER JURISDICTION UNDER CAFA**

On May 6, 2020, Apple removed the action from the Twentieth Judicial Circuit in St. Clair County, Illinois, to this Court under the Class Action Fairness Act (CAFA), *28 U.S.C. § 1332(d)(2)* (Doc. 1). CAFA authorizes federal jurisdiction over class actions where: (1) any member of the proposed class is a citizen of a state different from any defendant (minimal diversity requirement); (2) the proposed class consists of more than 100 members; and (3) the amount in controversy is $5,000,000 or more, aggregating all claims and exclusive of interest and costs. *See 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1332(d)(6)*.

Here, minimal diversity of citizenship exists between the parties, as Plaintiffs are residents of Illinois, and Apple is a California corporation (Doc. 1-1 at ¶¶ 10-13, 15). Moreover, the proposed class involves more than the requisite 100 members, as Plaintiffs allege that the putative class includes "thousands of people" (*Id.* at ¶ 154). Finally, the amount in controversy requirement is satisfied. Plaintiffs **[*10]** seek statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to *740 ILL. COMP. STAT. § 14/20(2)* and damages of $1,000 for each negligent violation of BIPA pursuant to *740 ILL. COMP. STAT. § 14/20(1)*. Plaintiffs allege at least three separate BIPA violations in Count I-III and have asserted there are thousands of Class Members. Even assuming a class size

of only 1,000, and without considering attorneys' fees, the Complaint alleges possible damages of $5,000,000. The amount in controversy meets the required

threshold.

The Court will discuss subject matter jurisdiction specifically with regard to Article III standing in detail below.

**ANALYSIS**

The Court will first address Apple's Article III standing argument raised in opposition to Count II. Additionally, the Court will evaluate Article III standing for Plaintiffs' other two claims *sua sponte*. Finally, the Court will address Apple's remaining arguments for 12(b)(6) dismissal.

**I. Article III Standing**

Jurisdiction must be established as a threshold matter, due to the nature and limits of federal judicial power. *Steel Co. v. Citizens for a Better Environment, 532 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)*. Without Article III standing, federal courts have no authority to resolve a case for want of subject matter jurisdiction. *MAO-MSO RecoveryII, LLC v. State Farm Mut. Auto. Ins. Co., 935 F.3d 573, 581 (7th Cir. 2019)*; *see also Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)*. Article III standing requires: **[\*11]**

(1) plaintiffs to suffer an actual or imminent, concrete and particularized injury-in-fact;

(2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury can be redressed by a favorable decision. *Bryant v. Compass Grp.USA, Inc., 958 F.3d 617, 620-21 (7th Cir. 2020)* (citing *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 352 (1992))*. Bare procedural violations separated from any concrete harm do not satisfy the injury-in-fact requirement. *Spokeo, 136 S.Ct. at 1549*,

*194 L.Ed.2d 635 (2016)*. The violation of a procedural right, conferred by a statute, may sufficiently constitute an injury-in-fact. *Id.* A statutory violation, however, must present "an 'appreciable risk of harm' to the underlying concrete interest [the legislature] sought to protect by enacting the statute." *Bryant, 958 F.3d at 621* (quoting *Groshek v. Time WarnerCable, Inc., 865 F.3d 884, 887 (7th Cir. 2017))*.

**A. Standing Under Section 15(a) of BIPA**

Apple claims that Plaintiffs fail to allege any particularized harm that resulted from Apple's supposed failure to comply with section 15(a) of BIPA. Section 15(a) requires private entities that possess biometric data to develop, publish, and follow a written policy containing a retention schedule and destruction guidelines. Without a particularized harm, Apple avers that the allegations do not satisfy Article III standing (Doc. 20, pp. 14-15).

Typically, the party that has removed a case to federal court, here Apple, has the burden to **[\*12]** prove standing. Yet, after removing the case under CAFA, Apple now seeks to dismiss this claim for lack of standing. Despite this unusual positioning, the Court will review this argument, as a federal court must satisfy itself that it has jurisdiction over the claims that appear before it. *Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)*.

As cited by Apple, the Seventh Circuit's recent decision in *Bryant v. Compass GroupUSA, Inc.* informs the discussion on subject matter jurisdiction over Plaintiffs' claims under BIPA section 15(a) (Doc. 20, pp. 14-15). *Bryant, 958 F.3d at 626*. In *Bryant*, the Seventh Circuit resolved an important issue that divided several district courts

concerning which BIPA violations give rise to a particularized and concrete injury for purposes of standing under Article III. *Id.* The *Bryant* court examined standing under sections 15(a) and 15(b) of BIPA. *Id.* at 619-20.

The Seventh Circuit, applying the analysis from Justice Thomas' concurring opinion in *Spokeo*, distinguished between the violation of personal and public rights. *Id. at 624*; *see Spokeo, 136 S.Ct. at 1550-54, 194 L.Ed.2d 635 (2016)*. In *Bryant*, the plaintiff used a vending machine, owned and operated by the defendant, that scanned fingerprints to create user accounts for payment purposes. *958 F.3d at 619*. The plaintiff asserted claims that the defendant never published a data-retention policy **[\*13]** or guidelines for destroying biometric information, violating section 15(a), and that the defendant never obtained written consent in the collection of her fingerprints, violating 15(b). *Id.*

In *Bryant*, the Seventh Circuit only evaluated a claim under the provision of section 15(a) requiring development of a publicly available written policy establishing a retention schedule and destruction guidelines. *Id. at 626*. Under this theory, the court held that the plaintiff did not sufficiently allege a concrete, particularized injury-in-fact resulting from the defendant's failure to develop such a written policy. *Id.*

The *Bryant* court found the duties conferred in this provision of section 15(a) are owed to the public generally, not to private individuals. *Id.*

This is not to say that a plaintiff never has standing under section 15(a), just that a particularized harm stemming from a public duty must be sufficiently alleged. *Id. at 622*; *see Miller v. Southwest Airlines Co., 926 F.3d 898, 902-03 (7th Cir. 2019)* (union airline workers sufficiently alleged a concrete injury-in-fact under section 15(a) when they faced

a potential material change in the terms and conditions of their employment with regards to clocking in with a fingerprint scanner). Because obligations imposed by section 15(a) are directed at the public as opposed to the individual, Article III **[\*14]** standing under this provision "seems to hinge more on the relationship of the parties." *Stauffer v. InnovativeHeights Fairview Heights, LLC,* ---F.Supp.3d at ---, 2020 WL 4815960 \*6 (S.D. Ill. Aug. 19, 2020).

It appears the Seventh Circuit left open the possibility of Article III standing when a plaintiff does allege a particularized harm even when the duties imposed by a statute, as in section 15(a), are generally duties to the public. Importantly, the *Bryant* court only assessed a claim under the provision requiring development of a written policy with a retention schedule and destruction guidelines, not under the provision mandating compliance with the retention schedule and destruction guidelines. *958 F.3d at 626*.

As in *Bryant,* Apple's purported failure to publicize a retention and destruction policy in violation of BIPA section 15(a) constitutes a public harm, not a harm particular to Plaintiffs. This violation, as *Bryant* illuminates, does not create the type of concrete, particularized injury necessary to satisfy Article III's requirements. Therefore, the Court finds Plaintiffs lack standing to bring this claim in federal court. As a result, Plaintiffs' claims under BIPA section 15(a) shall be remanded to the Circuit Court of St. Clair County. *See Bergquist v. Mann Bracken, LLP, 592 F.3d 816, 819 (7th Cir. 2010)* ("If some parts of a single **[\*15]** suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest.").

Unlike *Bryant*, however, Plaintiffs also allege Apple's failure to *destroy* biometric

information, in violation of section 15(a), caused harm.

Section 15(a) requires destruction of biometric data when "the initial purpose for collecting or obtaining such [data] has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." *740 ILL. COMP. STAT. § 14/15(a)*.

After the Seventh Circuit decided *Bryant,* the Northern District of Illinois evaluated Article III standing in *Cothron v. White Castle.* In *Cothron,* the court hypothesized that the second part of section 15(a) requiring permanent destruction of biometric data, when the initial purpose has been satisfied or within three years of the individual's last interaction with the private entity, could potentially create an individualized right; however, the court did not ultimately address that possibility because the plaintiff still worked for the entity collecting her biometric data. *See Cothronv. White Castle,* ---F.Supp.3d ---, 2020 WL 32505706 at \*3 (N.D. Ill. 2020).

In their Complaint, Plaintiffs allege Apple violated their right to **[\*16]** have their personal data deleted, which makes Plaintiffs' personal data vulnerable to hacking or other means of extraction (Doc. 1-1 at ¶¶ 110, 130, 133-38, 171, 174). Similar to *Cothron,* however, Plaintiffs do not allege that they have ceased use of the application or device collecting the biometric data. Thus, the initial purpose for collecting the data has not been satisfied, nor have three years passed since Plaintiffs last interacted with Apple or its devices. As such, Plaintiffs fail to describe a violation of the destruction requirements in section 15(a).

**B. Standing Under Section 15(b) of BIPA**

Continuing the Article III standing analysis, the Court undertakes an analysis of

whether it has subject matter jurisdiction over Plaintiffs' claims under section 15(b).

In *Bryant*, unlike the claims asserted under section 15(a), the Seventh Circuit found that the plaintiff asserted a concrete, particularized injury, as required to satisfy Article III's requirements with respect to her claim under section 15(b). *Id. at 626*. The Seventh Circuit also found that the obligations conferred in section 15(b) are owed to private individuals. *Id. at 624-26*. The court reasoned that, by failing to obtain written consent, the defendant "inflicted the concrete injury BIPA intended to protect against, **[\*17]** *i.e.* a consumer's loss of the power and ability to make informed decisions about the collection, storage, and use of her biometric information." *Id. at 627*. Moreover, the court noted that a

failure to adhere to the informed consent provision caused a concrete injury because the associated information was "substantive and personal" and may change a person's actions with regard to how he or she uses the device. *Id. at 626*.

*Bryant* sets out the analysis for Plaintiffs' claims under section 15(b). Section 15(b) requires private entities to make specific disclosures and receive written informed consent from consumers before collecting or capturing their biometric information. *740 ILL. COMP. STAT. § 14/15(b)*. And Plaintiffs allege that Apple never requested or received informed consent before collecting face geometries from their photos within the Photos app. Apple's purported violation of section 15(b) would create a concrete, particularized injury to Plaintiffs, as their power to make informed decisions about the collection and storage of their biometric data has been eroded. Accordingly, Plaintiffs have Article III standing for their claims under section 15(b).

### C. Standing Under Section 15(c) of BIPA

While the Seventh Circuit has not addressed Article III standing for BIPA claims arising under section 15(c), **[*18]** the analysis directly follows the *Bryant* court's approach to claims under section 15(a).

Article III standing requires allegations of a particularized and concrete harm.

*Bryant, 958 F.3d at 624*. A concrete injury does not necessarily mean a tangible harm. *Id.*

The *Spokeo* Court further clarified that for a plaintiff's injury to be particularized, the plaintiff must be affected in a personal and individual way. *136 S. Ct. at 1548*. And, for a plaintiff's injury to be concrete, the injury must be "de facto" and actually exist. *Id.*

Section 15(c) prohibits entities in possession of a person's or customer's biometric identifiers or information from selling, leasing, trading, or otherwise profiting from that data. *740 ILL. COMP. STAT. § 14/15(c)*. Here, Plaintiffs allege that Apple violated section 15(c) by marketing and selling its devices based upon claims that its facial recognition technology could sort photographs, thus profiting from a person's or customer's biometric data (Doc. 1-1 at ¶ 181). Importantly, Plaintiffs do not allege that Apple sold or otherwise profited from their *individual* biometric data. Plaintiffs seem to generally allege that Apple profited from sales of its devices which include a facial recognition feature within the pre-installed Photos app.

Plaintiffs' allegations are devoid **[*19]** of any particularized or concrete injury. Plaintiffs do not, nor could they, claim to be personally or individually affected by Apple selling devices based on the facial recognition technology in its Photos app. Moreover, by its plain language, section 15(c) clearly prohibits profiting from "a person's or a customer's"

biometric identifier or biometric information, not the general sales of devices equipped with facial recognition technology. Notably, even if BIPA sought to prohibit marketing campaigns or sales based on facial recognition technology, that prohibition would protect a right generally conveyed to the public, not an individual right, much like the public retention and destruction policy required through section 15(a).

Under the Supreme Court's guidance in *Spokeo,* as used by the Seventh Circuit in

*Bryant,* Plaintiffs' claim under section 15(c) does not satisfy the requirements of Article III standing. Plaintiffs have failed to demonstrate a concrete and particularized injury-in-fact resulting from Apple's purported violation of section 15(c) of BIPA. Thus, this claim also will be remanded to the Circuit Court of St. Clair County.

### II. Motion to Dismiss under 12(b)(6)

Because the remaining claim under BIPA section 15(b) is within the Court's

**[*20]** jurisdiction, the Court now turns to Apple's remaining arguments in its motion to dismiss.

The purpose of a motion to dismiss under *Rule 12(b)(6)* is to evaluate the adequacy of a complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990)*. To survive a *Rule 12(b)(6)* motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)*. A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* In deciding a motion to dismiss under *Rule 12(b)(6)*, the Court accepts as true all well-pleaded facts in

the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N.Wabash Venture, LLC,*

*714 F.3d 501, 504 (7th Cir. 2013)*. Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly, 550 U.S. at 555* (internal citations omitted).

### A. Biometric Identifiers and Biometric Information

Apple argues that Plaintiffs fail to allege that Apple, the device, or the Photos app links the alleged scans of face geometry from photos to identifiable individuals **[*21]** (Doc. 20, p. 1). In Apple's view, the purported facial templates do not qualify as biometric identifiers as defined by BIPA because they are anonymous and do not actually identify any individual (*Id.* at 7). According to Apple, the Illinois legislature chose to attach the word "identifier" to the word biometric to intentionally exclude data that does not identify an actual person (*Id.*). Apple further reasons that device users have a choice to "tag" and assign names to the albums within the People folder by inputting a name themselves and that Apple does not receive this information, even if it is personally identifying (*Id.* at 1).1

BIPA exhaustively defines what is a biometric identifier, along with providing

1 Apple distinguishes several BIPA cases relied on by Plaintiffs. Apple distinguishes *Rivera v. Google, Inc.* by emphasizing the fact that Google Photos created a set of biology-based measurements that were *used toidentify a person.* (Doc. 20, p. 10). Further, Apple distinguishes*Monroy v. Shutterfly* because Shutterfly operates a database that stores individual names to suggest for people in users' photographs, and only if no match is found, the user is prompted to enter a name. Apple argues *Norberg* **[*22]** *v. Shutterfly, Inc.* is also not comparable, as Norberg alleged Shutterfly used his personal face pattern to recognize and identify him in photographs posted to the photo sharing website. Apple separates this case from *In re Facebook BiometricInfo. Privacy Litig.,* because Facebook suggests an individual's name to automatically tag him, and the program puts names on the faces in the photos (*Id.*).

examples of what is not a biometric identifier, as follows:

"Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials **[*23]** regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

*740 ILL. COMP. STAT. § 14/10*. Even though photographs are explicitly excluded from the

definition of biometric identifier, several courts have determined that scans of

photographs for facial geometry do qualify under the definition of biometric identifier.

*See Rivera v. Google, Inc., 238 F.Supp.3d 1088 (N.D. Ill. 2017)*; *In re Facebook Biometric*

*Information Privacy Litigation, 185 F.Supp.3d 1155 (N.D. Cal. 2016)*; *Monroy v. Shutterfly,*

*Inc.*, 2017 WL 4099846 (N.D. Ill. 2017).

Apple argues, however, that these facial scans cannot qualify as biometric

identifiers because Apple does not use the scans to actually identify a person (Doc. 20,

p. 10). First, the Court is not convinced of Apple's proposed reading of the statutory

language regarding biometric identifiers. The definition of biometric **[*24]**  identifier explicitly

includes scans of face geometry, which Plaintiffs allege Apple collected without consent

(Doc. 1-1 at ¶ 27). Apple reads the word "identifier" to exclude data that does not identify an actual person

(Doc. 20, p. 7). This Court finds that interpretation too narrow. Each specific item on the list fits within the meaning of the term "biometric identifier." The word "identifier" modifies the word "biometric" to signal that the types of data listed *could* be used to identify a person. *See Rivera v. Google, Inc., 238 F.Supp.3d 1088 (N.D. Ill. 2017)* (interpreting "biometric identifier" to mean a biology-based set of measurements that can be used to identify a person). This reading is supported by the legislative intent finding for BIPA, which reads "Biometrics are unlike other unique identifiers that are used to access . . . sensitive information. For example, social security numbers, when compromised, can be changed." *See 740 ILL. COMP. STAT. § 14/5(c)*. This language suggests that "biometrics" are a type of "identifier" different from other identifiers like social security numbers. Second, even if Apple's proposed reading is correct, within the Complaint, Plaintiffs allege that the Photos app applies an algorithm to identify the device user (Doc. 1-1 at ¶ **[*25]** 101). Taken as true, at this stage, Plaintiffs sufficiently allege that the face scans qualify as biometric identifiers.

Further, Apple argues BIPA's definition of biometric information expressly excludes information derived from photographs. Apple cites to language in *Monroy v.Shutterfly, Inc.,* stating that "[i]t is clear that the data extracted from Monroy's photograph cannot constitute 'biometric information' within the meaning of the statute . . . " 2017 WL 4099846 * 3 (N.D. Ill. 2017); (Doc. 20, p. 7). Notably, only one district court has concluded that facial scans from photographs are emphatically excluded within the definition of biometric information. However, as BIPA section 15(b) covers the collection, capturing,

purchasing, receiving, or obtaining of "biometric identifiers *or* biometric information," it is unnecessary at this stage to decide whether the facial scans qualify as biometric information, as this Court has already found that the facial scans qualify as biometric identifiers. *740 ILL. COMP. STAT. § 14/10* (emphasis added). Plaintiffs need only sufficiently allege that Apple collected one or the other to state a plausible claim for relief under section 15(b), and they have done so.

## B. Collection and Possession of Biometric Data

Apple next argues that Plaintiffs **[*26]** fail to allege that Apple-as the manufacturer of Plaintiffs' devices or licensor of software-ever actually collects, captures, possesses, or otherwise obtains any of the information at issue (Doc. 20, pp. 10-11). Apple considers Plaintiffs'

allegation that Apple "possesses the Biometric Data" collected through the Photos app and stored locally on users' device to be speculative and conclusory (*Id.* at 11). Further, Apple argues only Plaintiffs own and control the devices and physical media that run the processes and generate the alleged scans of face geometry, and users choose to take and store photographs (*Id.* at 12). Apple also asserts the Complaint lacks allegations that Apple reserves the right to access a user's photos or associated information (*Id.*). Apple disputes Plaintiffs' theory that Apple is vicariously liable for the actions of the Photos app, as Apple's "software agent" (*Id.*).

Plaintiffs allege that Apple both "collected" and "possessed" their biometric data using proprietary software that Apple owned, exclusively controlled, and barred individual users from accessing, removing, or disabling (Doc. 1-1 at ¶¶ 75-79, 105-10). More specifically, Plaintiffs allege that Apple used its software **[*27]** to create, gather, and

harvest faceprints, which Apple stored in facial recognition databases that Apple provided users no knowledge of, or control over, and Apple alone could access the biometric data or disable its collection (*Id.* at ¶¶ 32, 65-104). Plaintiffs assert that Apple is subject to BIPA liability from its collection and possession of Plaintiffs' biometric data based on common law agency principles (*Id.* at ¶¶ 101-04). In furtherance of this theory, Plaintiffs allege that Apple's software cannot be used as intended without biometric data automatically being collected, that device users had no ability to disable the collection (or notice of collection), and Apple prevents users from accessing, disabling, or altering the software (*Id.* at ¶¶ 85-87, 89-91, 142-52).

Both parties correctly recognize that BIPA applies only to those entities "in possession" of or who "collect, capture, purchase, receive through trade, or otherwise obtain," biometric identifiers and biometric information (Doc. 20, p. 10); *740 ILL. COMP. STAT. § 14/15*. Apple urges the Court to adopt the definition of "collect" as "to gain or regain control of" (Doc. 20, p. 11). Plaintiffs urge the Court to interpret the word "collect" to mean "bring[ing] **[*28]** together [biometric data] into one body or place," and the term "possess" to mean "taking [those data] into control." (Doc. 24, p. 11).

Under either definition, at this stage-taking all allegations as true and making all inferences in favor of Plaintiffs-the Court finds that Plaintiffs state a plausible cause of action to survive Apple's 12(b)(6) motion to

dismiss. Apple argues that many BIPA claims against equipment manufacturers and vendors have been dismissed due to failure to allege the manufacturer collected or used the biometric data in violation of BIPA (Doc. 20, p. 14). *See Heard v. Becton, Dickinson & Co., 440 F.Supp.3d 960, 965-66 (N.D. Ill. 2020)*; *Kloss*

*v. Acuant, Inc., 2020 WL 2571901, at \*3 (N.D. Ill. May 21, 2020)*; *Namuwonge v. Kronos, Inc., 418 F.Supp.3d 279, 286 (N.D. Ill. 2019)*; *Bernal v. ADP, LLC*, 2019 WL 5028609, at \*1-2 (Ill. Cir. Ct. Aug. 23, 2019). The cases Apple cites are distinguishable here. In those cases, the relationship between the plaintiff and the manufacturer was a third-party relationship- the manufacturers sold machines to employers or businesses who then had employees or customers use the devices, ultimately collecting their biometric data. In those cases, the intervening employer or business possessed and collected the biometric data, not the manufacturer of the device. Here, Apple's relationship with the Plaintiffs is more direct. Apple sells devices directly to customers and, if what Plaintiffs allege is true, collects **[\*29]** the biometric data into a facial recognition database on the device that Apple alone can access.

Again, taking their allegations as true, Plaintiffs plausibly allege that Apple collected or possessed their data through the Photos app on their Apple devices, and that Apple alone can access the data stored within an internal database on their devices. Apple's further discussion disputing Plaintiffs' underlying theories of liability attempts to examine the merits of Plaintiffs' case, which is inappropriate at this stage absent further discovery. As the facts develop, it may be that Apple cannot access any data stored on the device via its software or otherwise. Other fact issues can inform the application of BIPA, but the Court does not reach those issues yet. The Court accepts as true Plaintiffs' allegations that Apple collected, possessed, and exercised exclusive control over the biometric data extracted from Plaintiffs' photos within the Photos app, and that Apple did not obtain Plaintiffs' consent in doing so.

## C. Intentional or Reckless Violations of BIPA

Apple next argues that because Plaintiffs seek heightened statutory damages under BIPA, they must allege scienter supporting recovery **[\*30]** for intentional and reckless conduct and have failed to do so (Doc. 20, p. 16). This argument has been raised in many BIPA cases. Section 20 of BIPA allows recovery for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate.

*740 ILL. COMP. STAT. § 14/20*. Several courts have held that mental states need not be alleged for the purpose of stating a plausible claim under BIPA to survive a motion to dismiss. *See Stauffer v. Innovative Heights Fairview Heights, LLC.,* ---F.Supp.3d at ---, 2020 WL 4815960 \* 13-14 (S.D. Ill. 2020) (finding that mental state standards come into play when determining remedies, not at the pleading stage); *Cothron v. White Castle System,Inc.,* ---F.Supp.3d at ---, *2020 WL 3250706 \* 5 (N.D. Ill. 2020)* (finding that overcoming a *Rule 12(b)(6)* motion does not require the plaintiff to plead facts that will determine the amount **[\*31]** of actual damages possible to recover); *Peatry v. Bimbo Bakeries USA, Inc., 2020 WL 919202 \* 6 (N.D. Ill. 2020)* (finding that Rule 8 does not require a plaintiff to plead damages with particularity but only requires a demand for relief sought); *Neals v. PARTechnology Corp., 419 F.Supp.3d 1088, 1092 (N.D. Ill. 2019)* (finding that under Rule 9(b), states of mind may be alleged generally, and Rule 8 does not demand that a plaintiff plead facts he or she would have no way of knowing prior to discovery). These courts

have found that mental states go only to the damages recoverable for a given claim and can be proven later, but per the relevant pleading requirements plaintiffs may allege states of mind generally.

Further, allegations that a defendant has made no effort to comply with BIPA's requirements, even though BIPA has been in effect for over ten years, are enough, at the pleading stage, to make claims of negligence or recklessness plausible. *Rogers v. BNSFRailway Co., 2019 WL 5635180 \* 5 (N.D. Ill. 2019)*. *But see Namuwonge v. Kronos, Inc., 418 F.Supp.3d 279, 286 (N.D. Ill. 2019)* (dismissing the claim for damages based on intentional and reckless conduct because allegations were only sufficient to plausibly infer negligent conduct); *Rogers v. CSX Intermodal Terminals, Inc., 409 F.Supp.3d 612, 618-19 (N.D. Ill. 2019)*.

Plaintiffs allege that Apple continues to collect faceprints from Illinois residents in violation of BIPA more than eleven years after BIPA's enactment (Doc. 1-1 at ¶¶ 21, 104). These allegations are sufficient to create an inference that the **[*32]** conduct was either negligent or reckless. As other courts have established, the states of mind with regard to BIPA only relate to possible recovery for each violation, which is not yet before the Court. Accordingly, Plaintiffs have sufficiently pled facts to state a cause of action under BIPA section 15(b).

**CONCLUSION**

For these reasons, the Motion to Dismiss (Doc. 19) filed by Defendant Apple Inc. is **GRANTED in part and DENIED in part**. Plaintiffs' claims in Count II and III under BIPA sections 15(a) and (c) are **REMANDED** to the Twentieth Judicial Circuit, St. Clair

County, Illinois, for lack of subject matter jurisdiction. Defendant Apple Inc.'s motion to

dismiss under *Federal Rule of Civil Procedure 12(b)(6)* as to Count I is **DENIED.**

**IT IS SO ORDERED.**

**DATED: November 12, 2020**

**NANCY J. ROSENSTENGEL**

**Chief U.S. District Judge**

---

**End of Document**

**CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.     This document complies with the word limitations of Fed. R. App. P. 5(c)(1) because this document contains 4,876 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  In preparing this certificate, I relied on the word count of the word processing system used to prepare this document, Word for Microsoft 365.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 12 -point Times New Roman font.


Dated:  November 12, 2020                    /s/ Daniel M. Feeney

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on November 12, 2020, he caused the foregoing Answer in Opposition to Petition for Permission to Appeal to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit via CM/ECF. He further certifies that the following attorneys will be served via electronic mail on November 12, 2020, and by FedEx overnight delivery, delivery charge prepaid, by delivering the filing to a FedEx receptacle in Chicago, Illinois on November 12, 2020:

David P. Saunders
Howard S. Suskin
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
hsuskin@jenner.com
dsaunders@jenner.com

Lee Wolosky
Andrew J. Lichtman
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
lwolosky@jenner.com
alichtman@jenner.com

Floyd Abrams
Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
fabrams@cahill.com
jkurtzberg@cahill.com

Dated:  November 12, 2020          /s/ Daniel M. Feeney_____